■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAFAEL LANZOT, Appellant.—Appeals from intermediate orders, Supreme Court, Bronx County, entered May 6, 1976, and May 17, 1976, dismissed as subsumed in the judgment of conviction rendered in the same court, July 27, 1976, and reviewed on the appeal from that judgment. Pretrial order, Supreme Court, Bronx County, entered May 6, 1976, reversed as a matter of discretion in the interest of justice, and Indictments Nos. 1789/75 and 394/76 severed. Pretrial order, Supreme Court, Bronx County, entered May 17, 1976, affirmed. Judgment of conviction, Supreme Court, Bronx County, rendered July 27, 1976, after consolidated trial to a jury, reversed, on the law, and the cases remanded to Supreme Court, Bronx County, for new trials for attempted murder, second degree, and robbery, first degree. On July 7, 1975, two New York City fire marshals saw defendant and another leaving a vacant building which had been the scene of several fires. The marshals identified themselves as police, and defendant's companion fled, pursued by Marshal Graniela. Marshal Russo remained, and questioned defendant as to his presence there. Defendant dropped a knife and a cigarette box and, when Russo bent to pick them up, produced a gun, ordered Russo not to move or his head would be blown off, grabbed Russo's gun, and escaped. For several days, Russo and others unsuccessfully sought defendant. During that time, Russo's gun was found in a garbage can on the basis of an anonymous tip. On July 12, Russo and a posse of marshals went to an apartment where defendant was said to be. After staking out the

building to prevent escape, Russo found defendant in a closet, and in an exchange of shots, both Russo and Graniela, who had joined Russo in the room, were seriously wounded, both being incapacitated for several months. Defendant's version was that he was fast asleep, was awakened suddenly by the two armed marshals bursting into the room, that he was shot by both men, and then fled to the closet where he kept a gun and from whence he returned fire. Marshal Di Marco was also a witness to some of the shootout. Defendant was captured by others as he attempted to escape the building. Before the end of 1975, defendant was indicted for attempted murder based on the events of July 12. In 1976, the delay being caused by the injuries to the two marshals who were necessary witnesses—indeed the only witnesses as to this charge—he was indicted for robbery based on the July 7, 1975 incident. The May 17, 1976 order denied a motion to dismiss the robbery indictment because testimony was given there about the circumstances of the July 12, 1975 case. It was necessary to present this evidence to explain to a questioning grand juror the long delay in submitting the evidence of the robbery, and we affirm denial of that motion. The proceedings before the Grand Jury could not have prejudiced defendant. The reverse is true of presentation at the trial, conducted pursuant to the consolidation order, of evidence concerning the events of July 12 to the same jury which heard the evidence of the robbery case. There was more than a mere possibility of prejudice in the consolidation. We consider the grant thereof to have been an improvident exercise of discretion and, accordingly, have reversed and severed the two cases. The joinder statute relied on in the dissent (CPL 200.20, subd 2, par [b]) is permissive and not mandatory and, as we are holding, "proof of the second [offense] would [not] be material and admissible as evidence in chief upon a trial of the first". This disposition alone would require reversal and remand. There are other reasons. The July 12 indictment was for attempted murder, first degree, based on the allegation that defendant had attempted to kill a police officer engaged in performance of his official duties (Penal Law, § 125.27, subd 1, par [a], cl [i]). The court charged as a matter of law that the two marshals were so engaged. Although defendant requested that it be charged as an issue of fact whether they were so engaged at the time of the shootout, we conclude as a matter of law that, on the facts of this case, they could not have been. Fire marshals are police officers (CPL 1.20, subd 34, par [i]), but New York City fire marshals are limited in their powers of arrest, whatever else they may do as police officers, by section 487a-15.0 of the Administrative Code of the City of New York. That section states in so many words that "their power to make arrests * * * shall be restricted to cases arising under laws relating to fires and the extinguishment thereof, and to fire perils." Whatever else may have been the purpose of the marshals in going to find defendant at the shootout scene, there is nothing whatever in the record to bring it within the restrictive provision of the Administrative Code, and they had no authority to arrest for anything else. The testimony given by the marshals themselves indicates clearly that the search for defendant was related only to his having robbed Russo of his gun and not to investigation of arson. Indeed, up to just before the time that they flushed defendant out, they did not know the exact identity of the person who had robbed Russo. Thus, since the restrictive language of the code limits the generality of CPL 1.20, they were not performing official duties when they paid their call on defendant, and the charge to the contrary was erroneous. A lesser included count of attempted homicide should have been charged, i.e., attempted murder, second degree, or any appropriate still lesser count such as at-

tempted manslaughter, first degree. Further error was committed when the court refused to charge, as requested, the provisions of section 125.27 (subd 2, par [a]) of the Penal Law, the affirmative defense of "extreme emotional disturbance" in response to the circumstances, as defendant described them, of his rude awakening by the marshals. He was entitled to have this defense submitted to the jury. For all the reasons stated, there should be new trials. Concur—Evans, Sandler, Lane and Markewich, JJ.

Kupferman, J. P., concurs in part and dissents in part in a memorandum, as follows: I concur in the result that there should be a new trial. However, I dissent from various portions of the opinion and from the determination with respect to consolidation. The consolidation was proper. (See *People v Green,* 67 AD2d 866.) Further, it was possible, as a matter of fact, for the jury to determine that the fire marshals were actually within the scope of their designated duties inasmuch as initiation of the matter was in connection with their investigation of a fire in which this defendant was in some way involved. However, with respect to that question of fact, the matter should have been submitted to the jury. (See *People v Cuvilje,* 66 AD2d 761.)