OPINION OF THE COURT
Duncan S. McNab, J.
Defendant has been charged, individually, with the attempted murder of Police Officer John Argiento on November *161 18, 1978, moments after the defendant had allegedly robbed a gas station while acting in concert with his girlfriend Ava Smith. On trial, defendant interposed the defense of insanity. Following the close of testimony, defendant, inter alla, requested that the court additionally charge on the affirmative defense of extreme emotional disturbance as set forth in subdivision 2 of section 125.27 of the Penal Law and submit, as a lesser included offense, the charge of attempted manslaughter in the first degree under subdivision 2 of section 125.20 of the Penal Law. Under constraint of People v Lanzot (67 AD2d 864), which this court understands is presently pending before the Court of Appeals, both of defendant’s requests were granted.
THE AFFIRMATIVE DEFENSE OF EXTREME EMOTIONAL DISTURBANCE
Section 125.27 of the Penal Law, as enacted September 1, 1974, sets forth the crime of murder in the first degree which encompasses the intentional killing of a police officer acting in the line of duty. In section 125.27 (subd 2, par [a]) of the Penal Law it also provides for the affirmative defense of extreme emotional disturbance, as follows:
"2. In any prosecution under subdivision one, it is an affirmative defense that:
"(a) The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant’s situation under the circumstances as the defendant believed them to be.”
In so doing, the Legislature clearly provided for a court or jury, upon a proper showing of mitigating circumstances in a consummated killing, to reduce what would otherwise be a murder in the first degree charge to manslaughter in the first degree. Quaere, however, does the same opportunity exist for one whose attempt proves unsuccessful? Prior to the above-noted Lanzot decision (supra), the few cases dealing with the issue of extreme emotional disturbance were all consummated murders. (People v Patterson, 39 NY2d 288, affd 432 US 197; People v Lyttle, 95 Misc 2d 879; People v Shelton, 88 Misc 2d 136.) However, in Lanzot (67 AD2d 864, supra), where the central issue involved the trial court’s error in charging that a *162 fire marshal was a police officer as a matter of law, the First Department, in dicta and without discussion, also unanimously agreed that the affirmative defense of extreme emotional disturbance should have been submitted upon the top count of attempted murder in the first degree.
In the present case, the People oppose the submission of this affirmative defense contending that there is no reasonable view of the evidence to support it, and that, unlike Lanzot (supra), the instant case involves an insanity defense which should in and of itself preclude defendant from also having this affirmative defense submitted to the jury. It is true that Lanzot (supra) involved a situation where the defendant, being sought on robbery charges, was, in his words, "rudely awakened” from a sound sleep by New York City Fire Marshals, rather than any question of insanity. While the question of extreme emotional disturbance (the present day progeny of the "heat of passion” concept) is distinct and separate from that of insanity, the meagre case law on the subject suggests to this court that both may, in a broad sense, involve some question of mental infirmity.
In support of this proposition, the court would point to the seminal case of People v Patterson (supra, pp 302-303) where a majority of the Court of Appeals wrote: "The purpose of the extreme emotional disturbance defense is to permit the defendant to show that his actions were caused by a mental inñrmity not arising to the level of insanity, and that he is less culpable for having committed them. * * * The opportunity opened for mitigation differs significantly from the traditional heat of passion defense * * * An action influenced by an extreme emotional disturbance is not one that is necessarily so spontaneously undertaken. Rather, it may be that a signiñcant mental trauma has affected a defendant’s mind for a substantial period of time, simmering in the unknowing subconscious and then inexplicably coming to the fore.” (Emphasis added.)
In affirming defendant Patterson’s murder conviction by a 5 to 3 vote (Patterson v New York, 432 US 197, supra), it is particularly noteworthy that a majority of the United States Supreme Court, in dicta, agreed that New York’s new extreme emotional disturbance formulation has in fact significantly expanded upon the old heat of passion concept. This court would agree with the comment of Judge Kassal, writing in People v Shelton (88 Misc 2d 136, 145, supra) that "[T]he *163 language of Patterson at least implies that [psychiatric] testimony is relevant and material” upon the issue of extreme emotional disturbance. Further, the court would concur with the three-pronged formulation set forth in Shelton (supra, p 149) and will include this definition in its charge to the jury, i.e., "[T]hat extreme emotional disturbance is the emotional state of an individual, who: (a) has no mental disease or defect that rises to the level established by section 30.05 of the Penal Law; and (b) is exposed to an extremely unusual and overwhelming stress; and (c) has an extreme emotional reaction to it, as a result of which there is a loss of self-control and reason is overborne by intense feelings, such as passion, anger, distress, grief, excessive agitation, or other similar emotions.” (Emphasis added.)
Special attention should also be directed to a footnote included by Judge Kassal (People v Shelton, supra, at p 146, n 1) wherein he noted that following the conclusion of the Shelton case, he had contacted Dr. Edward Sachar, Chairman of the Psychiatry Department of the Albert Einstein College of Medicine, and that he agreed with Dr. Sachar’s conclusion that an extreme emotional disturbance fell within the category of "transient situational disturbances” as used in the Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association, and that the latter category of disturbances represent " 'more or less transient disorders of any severity (including those of psychotic proportions) that occur in individuals without any apparent underlying mental disorders and that represent an acute reaction to overwhelming environmental stress/” (Emphasis added; see, also, People v Edwards, 64 AD2d 201.)
Bearing these legal principles in mind, the two psychiatrists called by the defense here at trial, Doctors Marvin Stone and Hans Corneille, both testified that defendant suffered from some form of schizophrenia, either of the paranoid or chronic undifferentiated type, at the various times he was examined, December 18 and 27, 1979, in the case of Dr. Stone, and on a total of three occasions, once each in 1973, 1975 and September, 1979 by Dr. Corneille.[1] Both recalled that defendant had complained of hearing accusing voices and of fearing that correction officials were "out to get him” on those occasions. *164 Additionally, it was undisputed that the defendant shot Officer Argiento in the neck moments after defendant’s girlfriend Ava Smith had been apprehended, in defendant’s presence, for the gas station robbery. According to the testimony of Ms. Smith, who had formerly lived with the defendant, and who testified against him at trial, the defendant’s role in the alleged robbery was to divert attention by acting as an innocent customer while she proceeded to hold up the station at gunpoint. She stated that both she and defendant had smoked marihuana some 15 minutes before the robbery, and that, shortly after the police placed her in custody in their patrol car, defendant placed a gun at Officer Argiento’s back and ordered him to drive, leading to the eventual struggle which resulted, a few moments later, in defendant’s shooting Officer Argiento once in the neck. Finally, both defense psychiatrists testified that smoking marihuana could have exacerbated defendant’s schizophrenic condition, or, in effect, triggered a psychotic episode or relapse. Hence, in view of recent judicial interpretations and all the facts and circumstances, this court feels that there is a question of fact as to whether defendant’s attack on Officer Argiento occurred while defendant was acting under an extreme emotional disturbance, particularly in view of the highly stressful situation which arose when defendant suddenly found his girlfriend confronted by the police moments after she had robbed a gas station at gunpoint while allegedly aided by defendant. Defendant’s motion to have this affirmative defense submitted to the jury, limited strictly to the top count of attempted murder in the first degree, would be granted.
ATTEMPTED MANSLAUGHTER IN THE FIRST DEGREE AS A LESSER INCLUDED OFFENSE
It is well settled that there is no such crime as attempted manslaughter in the second degree, in that, by definition, one cannot intentionally seek to commit a reckless act. (See People v Zimmerman, 46 AD2d 725, and cases cited therein.) This court would also seriously question whether one could commit an attempted manslaughter in the first degree under subdivision 1 of section 125.20 of the Penal Law which in effect would require that one intend to cause another serious physical injury while at the same time attempting to cause that other person’s death. (See People v Ross, 70 AD2d 541; People v Williams, 40 AD2d 1023.) Here, however, defen *165 dant’s request falls under subdivision 2 of section 125.20 of the Penal Law which provides that a person is guilty of manslaughter in the first degree when, "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as defined in paragraph (a) of subdivision one of section 125.25.” (Emphasis added.) Since at least one view of the evidence could support a finding that defendant attempted to cause Officer Argiento’s death while acting under an extreme emotional disturbance, and in view of the above-noted Lanzot decision (67 AD2d 864, supra), the court will submit a lesser charge of attempted manslaughter in the first degree under subdivision 2 of section 125.20 of the Penal Law along with the affirmative defense of extreme emotional disturbance.[2]

. The People’s psychiatrist, the afore-mentioned Dr. Daniel Schwartz, on the other hand, testified that defendant was malingering, i.e., that he suffered from no mental disease or defect.

. By way of postscript, the jury went on to find defendant guilty on all counts as charged.