# The People of the State of New York, Respondent, v Jose Tabarez, Also Known as Primo Fernandez, Appellant.

Second Department, December 30, 1985

APPEARANCES OF COUNSEL

*Stephen J. Pittari (David B. Weisfuse* of counsel), for appellant.

*Carl A. Vergari, District Attorney (Lois A. Cullen* and *Gerald D. Reilly* of counsel), for respondent.

**OPINION OF THE COURT**

GIBBONS, J.

Defendant was convicted, following a jury trial, of attempted murder in the first degree, robbery in the first degree and criminal possession of a weapon in the third degree. On this appeal, the principal issue is whether the County Court erred in refusing his request to instruct the jury on the affirmative defense of "extreme emotional disturbance" set forth in Penal Law § 125.27 (2) (a), which would have had the effect of permitting the jury to find him guilty of attempted manslaughter in the first degree (Penal Law §§ 110.00, 125.20 [2]) rather than attempted murder in the first degree in connection with a shooting incident in the City of New Rochelle on the evening of February 18, 1981. In our view, this question must be answered in the affirmative. Here, the "threshold" requirement entitling defendant to the charge was met, i.e., there was "sufficient credible evidence for the jury to determine that, by a preponderance of the evidence, the elements of the defense [were] established" *(see, People v*

*Moye,* 66 NY2d 887, 890, n). Accordingly, the ensuing conviction of attempted murder in the first degree should be reversed and the case remitted for a new trial on that count of the indictment. As so modified, the judgment should be affirmed.

Penal Law § 125.27 (2) (a) pertinently provides as follows:

"In any prosecution [for murder in the first degree], it is an affirmative defense that:

"(a) The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. Nothing contained in this paragraph shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime except murder in the second degree" *(cf.* Penal Law § 125.25 [1] [a]).

■ Initially, we note that the language of Penal Law § 125.27 (2) (a) specifically indicates that the defense is applicable only to murder in the first and second degrees. Nevertheless, we find that the defense is applicable to attempted murder in the first degree even in the absence of statutory language so indicating. Based upon rules of construction applicable to the Penal Law, i.e., it is not to be strictly construed, but rather construed "according to the fair import of [its] terms to promote justice and effect the objects of the law" (Penal Law § 5.00; *People v Teicher,* 52 NY2d 638, 647), we conclude that a defendant, acting under the influence of extreme emotional disturbance, who shoots at a police officer and misses, should not be convicted of a class A-1 felony, while he would be subject only to conviction for a class B felony had his bullet found its mark and killed the officer *(see,* Penal Law §§ 125.20, 125.25, 125.27, 110.05; *cf. People v Lanzot,* 67 AD2d 864, *appeal dismissed* 49 NY2d 796). Such a construction would defeat both the manifest purpose of section 125.27 to protect police officers, by inadvertently rewarding completed attempts resulting in death, and the purpose of the defense which is "to allow the finder of fact the discretionary power to mitigate the penalty when presented with a situation which, under the circumstances, appears to them to have caused an understandable weakness in one of their fellows" *(People v Casassa,* 49 NY2d 668, 680, *cert denied* 449 US 842).

Turning to the evidence, and viewing it most favorably to the accused *(see, People v Moye, supra; People v Watts,* 57

NY2d 299, 301; *People v Vera*, 94 AD2d 728, 729), it appears that defendant left his home on February 18, 1981 with no intention of committing a crime, boarded a train, got off at an unknown location (apparently in New Rochelle), and just started walking about aimlessly. Upon coming to a liquor store, the defendant entered and pulled out a gun and demanded money. The owner offered no resistance. After taking the money, the defendant "just stayed there" in the liquor store for a few more minutes, and then exited, turned to the left and walked (not ran) down Main Street toward Beachwood Avenue. A couple of minutes later, the defendant walked back past the liquor store, this time in the direction of the New England Thruway.

Shortly after the incident was reported to the police, the defendant, walking west on Main Street, was observed by New Rochelle Police Officer Douglas Burrell. The latter exited his vehicle, carrying a shotgun, and shouted to defendant to stop. Defendant continued walking and "sort of looked around". Officer Burrell then shouted, "Yeah, you, come here, police." As defendant turned, he fired in Officer Burrell's direction. Officer Burrell returned fire with the shotgun. At this point, and notwithstanding the fact that his bullets had injured no one, the defendant simply turned again and resumed walking (albeit, at a quickened pace), seemingly oblivious to whatever additional action the officer might have deemed it advisable to take. Other officers soon arrived, but even when confronted with several armed police officers and told to halt, the defendant initially failed to respond, and only later threw down his weapon. In his statement to the police, the defendant indicated that he had been out of work for approximately nine months. He had fired upon the police officer because "he was scared * * * just scared", and added that "a long time ago" in Santo Domingo, he had eaten a local fruit which not only made him extremely ill, but left residual effects, causing him on occasion to "act irrational[ly] or do things that he does not quite control".

In addition, the defendant was able to adduce expert psychiatric testimony to the effect that he had an IQ of 66, in the borderline retarded category; has several pronounced personality disorders, including schizophrenia; had become "increasingly depressed [and] * * * immobilized" during the period immediately preceding the shooting; and had fired upon the officer in an "isolated explosive episode", "spontaneously" and "automatically", i.e., "emotionally" and "without thinking",

which "invariably occurs" when a person is under "great emotional stress". In fact, on re-cross-examination, one of the defendant's experts (Dr. Tuckman) effectively indicated that, in his opinion, the defendant was acting under "extreme emotional disturbance" at the time of the instant shooting. This opinion, elicited by the prosecutor, bore directly on the nature and extent of defendant's emotional strain.

■ Taking the foregoing view of the evidence, it is clear that there exists on the peculiar facts and circumstances of this case sufficient evidence which could support a defendant's verdict on at least the first requirement of the statutory affirmative defense, to wit, that at the time of the instant shooting the defendant was acting under the influence of "extreme emotional disturbance" (Penal Law § 125.27 [2] [a]; *People v Casassa,* 49 NY2d 668, *cert denied* 449 US 842, *supra).* As the Court of Appeals noted in *People v Casassa (supra,* at pp 678, 679), the test to be applied to this element of the statutory defense is "wholly subjective" in nature, and requires a factual determination that, at the operative moment, "the particular defendant did in fact act under extreme emotional disturbance". Accordingly, no question as to the "reasonableness" of that disturbance is presented at this juncture, and, thus viewed, there was ample objective and opinion evidence from which a jury might have concluded that at the time that he turned and fired, this defendant, for whatever reason or combination of reasons, was suffering from extreme emotional disturbance.

A closer question is presented with regard to the second element of the statutory defense, for here the Court of Appeals has decreed an "objective" standard, pursuant to which the determination as to whether or not there exists a "reasonable explanation or excuse" for the proffered emotional disturbance (Penal Law § 125.27 [2] [a]) is to be made "by viewing the subjective, internal situation in which the defendant found himself and the external circumstances as he perceived them at the time, however inaccurate that perception may have been, and assessing from that standpoint whether the explanation or excuse for his emotional disturbance was reasonable" *(People v Casassa,* 49 NY2d 668, 679, *supra; People v Moye,* 66 NY2d 887, *supra; see also,* ALI Model Penal Code § 210.3). When making a determination of reasonableness, the critical element in the Model Penal Code formulation is the clause requiring that reasonableness be assessed "from the viewpoint of a person in the actor's situation" (ALI Model

Penal Code § 210.3 [1] [b]; *cf.* Penal Law § 125.27 [2] [a]). As noted in the Model Penal Code Commentaries, "[t]he word 'situation' is designedly ambiguous * * * it is clear that personal handicaps and some external circumstances must be taken into account * * * for it would be morally obtuse to appraise a crime for mitigation of punishment without reference to these factors" (ALI Model Penal Code and Commentaries § 210.3, at 62 [Official Draft and Revised Comments, 1980]).

Since the ultimate question of whether the affirmative defense has been established rests largely within the discretionary power of the jury *(see, People v Morrison,* 95 AD2d 868, 869), it is our belief that the delivery of the charge in this case was required in order to give effect to the salutary purpose underlying enactment of the statutory defense in the form suggested in the Model Penal Code *(see,* § 210.3 [1] [b]). As the Court of Appeals stated in *People v Casassa* (49 NY2d 668, 681, *supra):* "In our opinion, this statute would not require that the jury or the court as trier of fact find mitigation on any particular set of facts, but, rather, allows the finder of fact the opportunity to do so, such opportunity being conditional *only* upon a finding of extreme emotional disturbance in the first instance. In essence, the statute requires mitigation to be afforded an emotionally disturbed defendant only when the trier of fact, after considering a broad range of mitigating circumstances, believes that such leniency is justified."

And, as noted in the Commentaries to the Model Penal Code: "In the end, the question is whether the actor's loss of self-control can be understood in terms that arouse sympathy in the ordinary citizen. Section 210.3 [of the Model Penal Code] faces this issue squarely and leaves the ultimate judgment to the ordinary citizen in the function of a juror assigned to resolve the specific case" (ALI Model Penal Code and Commentaries § 210.3, at 63 [Official Draft and Revised Comments, 1980]).

In this regard we consider most significant an inquiry by the jurors in the case at bar whether they could recommend leniency to the court.

We agree with our dissenting colleagues that the robbery itself could not, as a matter of law, constitute a reasonable explanation or excuse for defendant's extreme emotional disturbance *(see,* ALI Model Penal Code and Commentaries § 210.3, at 64-65 [Official Draft and Revised Comments, 1980]), for an emotional disturbance is excusable only " 'if it is

occasioned by [a] provocation, event or situation *for which the offender was not culpably responsible' "* (ALI Model Penal Code and Commentaries § 210.3, at 64 [Official Draft and Revised Comments, 1980], quoting from the Final Report of the National Commission on Reform of Federal Criminal Laws —Proposed New Federal Criminal Code [18 USC] [Jan. 7, 1971]).

In our view, the evidence supports a conclusion that the explanation or excuse offered by this defendant was "objectively" reasonable, and not attributable to the robbery. Dr. Tuckman, a psychiatrist, diagnosed defendant's reaction as an "isolated explosive episode" triggered by increasing depression and immobilization. In his opinion, the tremendous strain affecting defendant flowed from "more than" the robbery. It was also caused by his prolonged unemployment and his inadequate fragile personality. Dr. Goldstein, a certified clinical psychologist, agreed that defendant's adjustment and explosive disorder predated the robbery by six months. Furthermore, in his opinion, defendant's residual type schizophrenia probably dated back to his childhood and first hospitalization at age 14 (from the toxic fruit).

In sum, the evidence on this record indicates that defendant's disturbance could have predated the robbery, and, taking into account his inadequate personality and borderline retardation, could have been triggered by the stress of his prolonged unemployment, as well as the residual effects of his ingestion of toxic fruit as a youngster in Santo Domingo. Whether the culpable or nonculpable situations and events were responsible for defendant's disturbance was a factual question to be resolved by the jury, upon proper instructions.

To reach its conclusion that there is insufficient credible evidence to support the defense of extreme emotional disturbance, the dissent emphasizes unfavorable portions of the testimony, in abrogation of the rule that the evidence must be viewed in a light most favorable to defendant *(see, People v Moye,* 66 NY2d 887, *supra; People v Watts, supra,* at p 301; *People v Vera,* 94 AD2d 728, 729, *supra).* That defendant was not psychotic or insane is irrelevant. The issue is whether there was sufficient evidence to create a question for the trier of fact that defendant was acting under the influence of extreme emotional disturbance, for which there was a reasonable explanation or excuse. Contrary to the position adopted by the dissent, the evidence permits a conclusion that defendant's overwhelming emotional stress arose prior to and was

triggered by factors other than his commission of the robbery. The dissent, rather than acknowledging the factual issue raised, resolves it, concluding that defendant brought about his own mental disturbance by involving himself in a crime. The cause and reasonableness of defendant's extreme emotional disturbance was properly a factual question to be resolved by the jury, for once the threshold requirement is met, i.e., once "there is sufficient credible evidence for the jury to determine that, by a preponderance of the evidence, the elements of the defense are established", it is "then for the jury to resolve inconsistencies in testimony and reach conclusions as to the 'volitional, deliberate and calculated' nature of defendant's acts" *(People v Moye,* 66 NY2d 887, 890, n, *supra).*

We are persuaded in reaching this conclusion by the peculiar facts and circumstances of this case, particularly the uncontroverted testimony of prosecution witnesses concerning defendant's strange behavior on the date of the robbery, his hesitation, aimless wandering and seeming incomprehension of his situation. We acknowledge that it will be a rare case where the defense of extreme emotional disturbance will be applicable when a homicide or attempted homicide follows commission of another crime.

Accordingly, since, under the facts and circumstances of this case, there was sufficient credible evidence which would support a finding of extreme emotional disturbance, and inasmuch as an explanation had been offered by the defendant and his psychiatric experts, "which a rational jury might have accepted or rejected" *(see, People v Moye,* 66 NY2d 887, 890, *supra),* the County Court erred in refusing to honor the defendant's request to charge on the affirmative defense of "extreme emotional disturbance" (Penal Law § 125.27 [2] [a]; *see, People v Lanzot,* 67 AD2d 864, *appeal dismissed* 49 NY2d 796, *supra).* Under such circumstances, the failure of the trial court to deliver the requested charge constituted reversible error *(see, People v Moye, supra; People v Watts,* 57 NY2d 299, 301, *supra; People v Vera,* 94 AD2d 728, 729, *supra).*

We finally note that harmless error analysis has no place on the facts and circumstances of this case, given the jurors' request concerning leniency. While they found that defendant possessed the requisite intent for attempted murder, they nevertheless evidenced precisely the sort of understanding to which the defense is directed, i.e., "whether the actor's loss of self-control can be understood in terms that arouse sympathy in the ordinary citizen" (ALI Model Penal Code and Commen-

taries § 210.3, at 63 [Official Draft and Revised Comments, 1980]). Contrary to the contention of the dissent, the jury was not permitted "to consider lesser degrees of the crime of attempted murder in the first degree and thereby exercise an appropriate degree of leniency, if it had been so inclined". The trial court properly instructed the jurors that they could consider the lesser included offenses only if they found defendant not guilty of attempted murder. The jurors did find defendant guilty of attempted murder, and, therefore, pursuant to the court's instruction, could not exercise leniency with respect to that crime because the mitigating factor of extreme emotional disturbance was not presented to them. The jury could have exercised leniency *and* followed the court's instruction only if the defense of extreme emotional disturbance had been charged.

LAWRENCE, J. (concurring in part and dissenting in part). We are unanimous in affirming the convictions for robbery in the first degree and criminal possession of a weapon in the third degree and the sentences imposed thereon. We also agree that the affirmative defense of extreme emotional disturbance is available, in a proper case, where the charge is attempted murder of a police officer (Penal Law §§ 110.00, 125.27 [2] [a]; *People v Lanzot,* 67 AD2d 864, 866, *appeal dismissed* 49 NY2d 796). The issue which divides us is simply whether in this case the evidence presented was such as to warrant submitting the affirmative defense to the jury. In my view, based on the law and the facts, the trial court properly declined defendant's request to so charge the jury.

As noted by the Court of Appeals in *People v Moye* (66 NY2d 887, 890, n), "[i]n determining whether to submit the affirmative defense of extreme emotional disturbance to the jury, it is for the court initially to decide if there is sufficient credible evidence for the jury to determine that, by a preponderance of the evidence, the elements of the defense are established".

Reviewing the evidence in the light most favorable to defendant, as we must on this issue *(see, People v Watts,* 57 NY2d 299), certain facts were nevertheless clearly established.

On February 18, 1981, a Wednesday, at about 6:30 P.M., defendant walked into a liquor store located on Main Street in New Rochelle. After inspecting the wine rack and appearing to be interested in the price of the wine on display, he pulled out a gun and said, "Give me money". The proprietor told him

to take the money and defendant proceeded to clean out the cash register. He then examined a wallet on a nearby desk, which was empty, and asked, "Is that all?" Then he "turned around and walked out [of the store] very calmly". The proprietor testified that during the robbery defendant was calm and did not appear agitated or excited.

A short time later, a police officer responding to a radio report of the robbery, spotted defendant approximately a quarter of a mile from the liquor store. The officer exited his police car armed with a shotgun, and directed defendant to halt. Defendant looked over his shoulder, then turned and fired *four shots* at the police officer. The officer returned the fire. Each missed the other. Moments later, surrounded by several police officers, defendant dropped his weapon and surrendered.

The next day, upon questioning by a Spanish-speaking police officer,[1] who first gave defendant his *Miranda* rights, defendant confessed to the robbery and shooting. He disclosed that he had stolen the gun from a grocery store in his neighborhood. He further stated that he had fired at the police officer because "he was just scared".

Prior to his trial, defendant served a notice pursuant to CPL 250.10 that he intended to rely on an insanity defense and would offer psychiatric evidence in support thereof. Subsequently, the insanity defense was withdrawn before the presentation of the defendant's case,[2] and the court indicated to the jury that the psychiatric testimony that the defense would present would be received *on the limited issue of intent.*

The court specifically instructed the jury as follows:

"Before we begin the defendant's case, I would like to offer a word of explanation to you.

"As I understand it, the defendant's witness, or the next two witnesses, will be a psychologist and a psychiatrist.

"The defendant in this case has not interposed a defense of not guilty by reason of insanity. There was no claim he was insane at the time this happened as provided by law. It's being offered on the question of intent and may be considered for that purpose.

---

1. Defendant came to this country in 1979 from Santo Domingo and could speak very little English.

2. The record does not disclose precisely when the insanity defense was withdrawn, but following the court's charge to the jury, defense counsel indicated that the insanity defense was withdrawn "long ago".

"In addition, some of these witnesses will be permitted to testify to some hearsay, that is, what other people said to them, probably for the most part what the defendant said to them during this examination, and this is permitted for the purpose of the fact that the person said it, not for the purpose that what they said is true."

No objection was taken to the limiting instructions, which thus became the law of the case. Based upon the limiting instructions, the trial court ruled that the expert psychiatric testimony upon which defendant now relies was simply not available to support the affirmative defense of extreme emotional disturbance.

Even if we consider the psychiatric testimony on this appeal despite the limiting instructions, it is clear that the expert testimony was not sufficient to establish the elements of the affirmative defense.

It is an affirmative defense to the crime of attempted murder that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse (Penal Law §§ 110.00, 125.27; *People v Patterson*, 39 NY2d 288, 302, *affd* 432 US 197), and the defendant is required to establish such defense by a preponderance of the credible evidence (Penal Law § 25.00 [2]; *People v Patterson, supra*).

The Court of Appeals has indicated that the defense of extreme emotional disturbance has two principal elements *(People v Casassa*, 49 NY2d 668, 678-679, *cert denied* 449 US 842). The first one, that the defendant acted under extreme emotional disturbance, is "wholly subjective—i.e., it involves a determination that the particular defendant did in fact act under extreme emotional disturbance, that the claimed explanation as to the cause of his action is not contrived or sham" *(People v Casassa, supra*, at pp 678-679). The second component requires that there be a reasonable explanation or excuse for the particular emotional disturbance *(People v Casassa, supra*, at p 679).

It is clear that the affirmative defense of extreme emotional disturbance was intended to replace "the traditional language of 'heat of passion', with a new formulation", and thus avoid "so arbitrary a limit on the nature of circumstances that might justify a mitigation" *(People v Patterson, supra*, at pp 300-301). Nevertheless, implicit in the Model Penal Code formulation of the defense, from which our statute is derived,

is the concept that an extreme emotional disturbance is excusable only " 'if it is occasioned by any provocation * * * *for which the offender was not culpably responsible' "* (ALI Model Penal Code and Commentaries § 210.3, at 64 [Official Draft and Revised Comments, 1980], quoting from the Final Report of the National Commission on Reform of Federal Criminal Laws—Proposed New Federal Criminal Code [18 USC] [Jan. 7, 1971]). "Under this formulation, extreme emotional disturbance will not reduce murder to manslaughter if the actor has intentionally, knowingly, recklessly, or negligently brought about his own mental disturbance, *such as by involving himself in a crime"* (ALI Model Penal Code and Commentaries § 210.3, at 64 [Official Draft and Revised Comments, 1980]; emphasis added).

Thus, it must be concluded that in enacting the affirmative defense, the Legislature did not intend it to apply where the emotional stress arises out of and is directly related to the commission of an armed violent felony, such as robbery in the first degree. Obviously, a person committing an armed robbery may be acting under extreme emotional stress which might overwhelm him and cause him to lose self-control. According to the psychiatric testimony, that is precisely what happened in this case.

The defense psychiatrist described defendant as mildly retarded with several pronounced personality disorders, including schizophrenia. However, the defense psychiatrist testified that defendant was *not psychotic* on the day of the robbery and shooting. He further testified that defendant was not "legally insane", "[b]ecause * * * up until the firing of the gun, he knew what he was doing". The defense psychiatrist opined: "[W]hat I saw, was a man who knew what he was doing, but was overwhelmed by tremendous strain, and the reaction was automatic, *but he knew what he was doing up until the time he started firing the weapon"* (emphasis added).

The psychiatrist gave the following further responses on redirect examination:

"Q. You have referred to emotional strain and stress and pressure. Can you be specific as to your opinion of what those pressures were at the moment that [defendant] shot the gun? What were the pressures confronting him?

"A. The pressures of being out of work, of knowing that he had done something bad, something wrong.

"Q. When you say, 'done something wrong'—

"A. The robbery, not knowing what to do about it, and being confronted with a police officer, I believe it was overwhelming to him."

The testimony does not describe a significant mental trauma that has affected the defendant's mind for a substantial period of time, simmering in the unknown subconscious and then coming to the fore *(see, People v Patterson,* 39 NY2d 288, 303, *supra).* Nor can such a result properly be achieved, in my view, by linking the situation which led to the commission of the armed robbery with the alleged "detached, isolated explosive episode" which according to the defense psychiatrist prevented defendant from reflecting upon his actions *at the time of the shooting.*

Defendant's actions at the time of the robbery and his subsequent shooting at the police officer were not bizarre so as to add credible support to the claim of extreme emotional disturbance, unrelated to defendant's own culpable conduct *(cf. People v Moye, supra).* Once defendant had decided to rob the liquor store (assuming it was a spur of the moment decision), it is not disputed that he calmly committed the crime. Afterwards, he walked from the store, turned left, but upon changing his mind, he turned around and walked back past the store, motioning to the store owner, apparently to stay inside the store. Defendant then proceeded for a distance of about one-quarter mile before he was stopped by the police. Any hesitation by the defendant during his shooting encounter with the police was clearly associated by the defense psychiatrist with the situation in which defendant found himself, knowing he had "done something bad, something wrong". Moreover, I cannot see any significance in defendant's statement, made to the Spanish-speaking police officer the day after the shooting, in substance, that he still suffered some residual effects from eating some toxic fruit as a youngster in Santo Domingo. The defense psychologist testified concerning this long past incident, allegedly involving some unknown fruit with hallucinogenic properties, as related to him, not by the defendant, but by defendant's brother; but there was no documentation of such an alleged event. Nor did the experts proffered by defendant link the alleged incident with the robbery or the shooting. The defense psychiatrist *never attempted to relate* this "fruit of a poisoned tree" to defendant's mental state at the time of the shooting. In fact, the psychiatrist never mentioned the toxic fruit incident at all in his testimony. Further, I simply cannot agree with my colleagues

in the majority that defendant, who engaged in a shoot-out with the police officer after he had committed an armed robbery, was entitled to a charge as to extreme emotional disturbance because he had been unemployed for a period of nine months prior to the crime and allegedly suffered from an "inadequate fragile personality".

Accordingly, it cannot be said that there was sufficient credible evidence which would warrant a charge to the jury on the affirmative defense of extreme emotional disturbance (compare, People v Walker, 64 NY2d 741, with People v Moye, 66 NY2d 887, supra).

Finally, it is noteworthy that as a result of the testimony of the defense psychiatrist that defendant "could not formulate an intent to harm the officer" and that his behavior in shooting at the officer was "a detached, isolated explosive episode * * * having no purpose or prethinking at all", the trial court charged the jury with respect to the count of attempted murder, as to the lesser included offenses of attempted aggravated assault upon a police officer, attempted assault in the first degree, and reckless endangerment in the first degree. Thus, the jury was permitted to consider lesser degrees of the crime of attempted murder in the first degree and thereby exercise an appropriate degree of leniency, if it had been so inclined, in accord with the facts as presented in this case.

MOLLEN, P. J., and BRACKEN, J., concur with GIBBONS, J.; LAWRENCE, J., concurs in the affirmance of the convictions of robbery in the first degree and criminal possession of a weapon in the third degree, but dissents as to the reversal of the conviction of attempted murder in the first degree and votes to affirm said conviction, in an opinion, in which WEINSTEIN, J., concurs.

Judgment of the County Court, Westchester County, rendered December 12, 1981, modified, on the law, by reversing the conviction of attempted murder in the first degree, and the sentence imposed thereon is vacated. As so modified, judgment affirmed and new trial ordered as to the count of attempted murder in the first degree.