Argued and submitted December 5, 1990, the decision of the Court of Appeals and the judgment of the circuit court reversed and case remanded to circuit court for further proceedings August 1, 1991

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## JOHNNY J. COUNTS,
*Petitioner on Review.*

## (CC C88-08-35588; CA A60040; SC S37272)

816 P2d 1157

Leland R. Berger, Portland, argued the cause for petitioner on review. With him on the petition was Jon P. Martz, Portland.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

William L. Tufts, Eugene, filed a brief on behalf of *amici curiae* for Oregon Criminal Defense Lawyers Association and National Association of Criminal Defense Lawyers.

Before Peterson, Chief Justice, and Carson, Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The issue in this criminal case is whether the affirmative defense of mental disease or defect, ORS 161.295(1),[1] and the affirmative defense of extreme emotional disturbance, ORS 163.135(1),[2] are mutually exclusive.[3] The trial court ruled that the defenses are mutually exclusive. The Court of Appeals affirmed. *State v. Counts*, 101 Or App 439, 790 P2d 1209 (1990). We hold that the defenses are not mutually exclusive and, therefore, we reverse.

Defendant waived his right to a jury trial and the court tried this case on stipulated facts. Defendant took a gun from his closet and shot his wife in the head while she was sleeping. Defendant put the gun in his wife's hand, dialed "911," and reported that she had committed suicide. Later, defendant told the police that he had killed his wife because he believed that she was trying to kill him and his dogs. He said he believed this because there was a spot on his arm where he thought his wife had given him an injection of

---

[1] ORS 161.295(1) provides:

"A person is guilty except for insanity if, as a result of mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law."

[2] ORS 163.135(1) provides:

"It is an affirmative defense to murder for purposes of ORS 163.115(1)(a) [intentional murder] that the homicide was committed under the influence of extreme emotional disturbance when such disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act, and for which disturbance there is a reasonable explanation. The reasonableness of the explanation for the disturbance shall be determined from the standpoint of an ordinary person in the actor's situation under the circumstances as the actor reasonably believes them to be. Extreme emotional disturbance does not constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[3] A defendant who is found "guilty except for insanity" of a crime, *i.e.*, a defendant who has established the defense of mental disease or defect, is placed under the jurisdiction of the Psychiatric Security Review Board upon certain findings by the trial court. ORS 161.327(1). "The period of jurisdiction of the board shall be found equal to the maximum sentence provided by statute for the crime which the person was found guilty except for insanity." ORS 161.327(1). If, as in this case, a defendant is found guilty except for insanity of intentional murder, the board has jurisdiction over defendant *for life:* ORS 163.115(3)(a). If the defendant can prove, however, that the crime should be mitigated to manslaughter in the first degree because it was committed under the influence of an extreme emotional disturbance, the board has jurisdiction over the defendant *for 20 years.* ORS 161.605(1).

poison, because his cigarettes "tasted real funny," because a soft drink he had been drinking tasted strange, because, when he walked by his wife's bedroom, he thought he heard her whisper "die, die," and because he believed that she had taken out an insurance policy on his life.[4] Defendant was charged with intentional murder. ORS 163.115(1)(a).[5]

In preparation for trial, defendant timely filed notices of intent to rely on the affirmative defenses of mental disease or defect and extreme emotional disturbance. *See* ORS 161.309(3) (notice required to introduce evidence of insanity); ORS 163.135(3) (notice required to introduce evidence of extreme emotional disturbance). Psychiatric evaluations conducted at the request of defense counsel and the state indicated that defendant suffered from an "organic delusional syndrome" and a "paranoid disorder." A psychiatrist retained by the state reported:

> "[Defendant] is clearly psychotic and in all likelihood was so at the time of the commission of the crime with which he is charged. I do believe that he did suffer from a mental defect at the time of the commission of the crime and that the defect rendered him incapable of appreciating the criminality of his conduct. I further believe that he committed the alleged homicide under the influence of extreme emotional disturbance and that the disturbance was not the result of his own intentional, knowing, reckless or criminal neglect. The explanation appears to be chronic paranoid state with continuing psychosis."

At trial, the focus of the discussion was on whether defendant could rely on both the mental disease or defect and extreme emotional disturbance defenses. Defendant argued that he could rely on both defenses and that both had been proved. The state conceded that defendant had proved the defense of mental disease or defect, but argued that defendant had not proved the defense of extreme emotional

---

[4] The record contains no evidence that defendant's wife was actually trying to kill him.

[5] ORS 163.115 provides in part:

"(1) * * * [C]riminal homicide constitutes murder:

"(a) When it is committed intentionally, except that it is an affirmative defense that, at the time of the homicide, the defendant was under the influence of an extreme emotional disturbance[.]"

disturbance.[6] The state argued that defendant should be found guilty except for insanity of intentional murder.

The trial court held that the defenses are mutually exclusive. More precisely, the court held that upon a defendant's proof of the mental disease or defect defense, the trier of fact is precluded from considering the mitigating factor of extreme emotional disturbance. The court then found that defendant had proved the defense of mental disease or defect and entered a judgment that defendant was guilty except for insanity of intentional murder. ORS 161.319; ORS 161.325(2)(a). The Court of Appeals affirmed. *State v. Counts, supra,* 101 Or App at 442-43.

In a case where a defendant asserts the defense of mental disease or defect under ORS 161.295(1), before a trier of fact may find the defendant "guilty except for insanity" of a crime, the defendant must first be found "guilty" of that crime.[7] This conclusion is supported by the plain language of ORS 161.295(1), its legislative history, and this court's case law.

ORS 161.295(1) provides:

> "A person is *guilty* except for insanity if, as a result of mental disease or defect *at the time of engaging in criminal conduct,* the person lacks substantial capacity either to appreciate the *criminality* of the conduct or to conform the conduct to the *requirements of law.*" (Emphasis added.)

The form of the verdict, *"guilty* except for insanity," implies that the trier of fact's initial inquiry is one of criminal culpability. A trial court, when appropriate, has always asked a jury if it found the defendant "guilty," "not guilty," or "guilty except for insanity" (or some verbal variation of the third option). *See Leland v. Oregon,* 343 US 790, 793-94, 72 S

---

[6] The state expressly told the trial court that it did not argue that the defenses of mental disease or defect and extreme emotional disturbance were mutually exclusive. The state argued, rather, that although there may be situations where the two defenses could work together, this case was not one of them.

[7] In this context, "guilt" means that the state has proved all the elements of a crime and disproved all raised defenses beyond a reasonable doubt and that the defendant has failed to prove by a preponderance of the evidence any affirmative defenses the defendant has raised. *See* ORS 161.055 (defining "defense" and "affirmative defense" and assigning burden of proof); ORS 136.415 (defendant presumed innocent until proven guilty).

Ct 1002, 96 L Ed 1302, *reh'g den* 344 US 848 (1952) (recognizing this method). In such a case, if the state did not prove beyond a reasonable doubt that the defendant committed a crime or if the defendant proved a complete defense to the crime, then regardless of the defendant's sanity, the proper verdict was "not guilty."

ORS 161.295(1) also requires that, before a trier of fact may find a defendant "guilty except for insanity," the defendant must have been engaging in *"criminal* conduct." Conduct is not "criminal" unless it meets the elements of an offense defined by the legislature, the state has disproved any raised defenses, and the defendant has failed to prove available affirmative defenses. ORS 161.055; ORS 136.415. In other words, the requisite proof of "criminal conduct" is requisite proof of "guilt." Likewise, by its plain language, ORS 161.295(1) questions whether the defendant could appreciate the "criminality" of conduct and had the capacity to "conform the conduct to the requirements of law."[8] If a defendant's conduct, in fact, is not criminal and conforms to the requirements of law, it would make little sense to question whether the defendant appreciated the criminality of the conduct or had the capacity to conform to the requirements of law.

The legislative history of ORS 161.295(1) and this court's case law also support the conclusion that a defendant's "guilt" must be established before sanity becomes an issue in the case. In *State v. Olmstead,* 310 Or 455, 800 P2d 277 (1990), this court considered whether the insanity defense could be applied to a strict liability offense. We held that it could be applied to such an offense because a defendant's proof of the insanity defense was not an issue of whether a defendant possessed or lacked a culpable mental state; rather, it was an issue of whether society wanted to hold that person criminally responsible. *Id.* at 461-66. In considering the issues, we examined the legislative history of the insanity defense. We determined that one of the reasons the insanity defense did not go to the issue of defendant's mental state is because an application of the insanity defense

---

[8] In the phrase "conform the conduct to the requirements of law" of ORS 161.295(1), "the conduct" refers to the "criminal conduct" as set out earlier in the statute.

presupposes proof of all of the material elements of the crime charged, including any requisite mental state. An absence of proof on any material element of the crime would mandate acquittal rather than a verdict of "guilty except for insanity." *Id.* at 462.[9]

■        Thus, the application of the defense of mental disease or defect requires a serial inquiry: (1) Did the state prove all of the material elements of the crime and disprove any defenses raised by the defendant beyond a reasonable doubt? (2) Has the defendant failed to prove, by a preponderance of evidence, any raised affirmative defenses to the crime? (3) Was the defendant "insane" (as defined by ORS 161.295(1)) at the time of engaging in the criminal conduct? A defendant may be found "guilty except for insanity" of the crime only if all three questions are answered in the affirmative. In sum, we hold that the defense of mental disease or defect requires a finding that the defendant is criminally *culpable* before a question arises as to whether society will hold the defendant criminally *responsible.*

■        We now turn to the role of the affirmative defense of extreme emotional disturbance in the determination of criminal culpability when the crime charged is intentional murder. ORS 163.135(1) provides in part:

> "It is an affirmative defense to murder for purposes of ORS 163.115(1)(a) [intentional murder] that the homicide was committed under the influence of extreme emotional

---

[9] In *State v. Olmstead,* 310 Or 455, 465, 800 P2d 277 (1990), we quoted the legislative history of ORS 161.295, which states:

"O.R.S. 161.295 provides that a person is not responsible for 'criminal conduct' if he meets the rest of the insanity defense test. *Before the question of whether the person is responsible or not need arise, the evidence has to prove criminal conduct.*" (Emphasis added.)

In *Olmstead,* we made the following statements about the insanity defense:

"ORS 161.295 presupposes that the state has proved all elements of the crime, whatever they may be: the effect of proving a mental disease or defect is that the defendant is *'guilty* except for insanity.'" *Olmstead, supra,* 310 Or at 463 (emphasis in original).

"[A] person who is found 'guilty except for insanity' under ORS 161.295 * * * is not acquitted." *Id.*

"[A] defendant who is found guilty except for insanity has committed all elements of the crime * * *." *Id.* at 464.

"[T]he [insanity] defense applies after all elements of the crime have been proved[.]" *Id.* at 465.

disturbance when such disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act, and for which disturbance there is a reasonable explanation."

The three components of extreme emotional disturbance are: (1) Did the defendant commit the homicide under the influence of an extreme emotional disturbance? (2) Was the disturbance the result of the defendant's own intentional, knowing, reckless, or criminally negligent act?[10] (3) Was there a reasonable explanation for the disturbance?

The first element of the extreme emotional disturbance defense is a purely subjective inquiry. It asks whether the defendant was in fact acting under the influence of an extreme emotional disturbance when committing the homicide. The defendant is entitled to the defense only if the defendant was acting under such a disturbance. ORS 163.135(1).

The disturbance the defendant must prove is that he or she "acted under" an *emotional* disturbance. The extreme emotional disturbance defense was introduced as part of the legislature's 1971 revision of the criminal code. As proposed to the legislature, the Criminal Law Revision Commission's version of the defense referred to "an extreme *mental or* emotional disturbance." Criminal Law Revision Commission, Tent. Draft No. 1, at 17 (March 1970) (emphasis added). The term "mental" was taken out of the defense in order to distinguish between this defense and "mental disease or defect" as it was used in the responsibility article.[11] Testimony of Project Director Donald Paillette, Senate Criminal Law and Procedure Committee, March 5, 1971, Tape 8, Side 1, Cue No. 870. The removal of "mental" disturbance from the proposed defense served to make the point that "mental disease or defect," as used in the responsibility defenses (partial responsibility, ORS 161.300, and insanity, ORS 161.295(1)), is different from the type of disturbance required to be proven under the extreme emotional disturbance

---

[10] Because the second element does not present an issue in this case, it is not discussed further.

[11] The responsibility article of the proposed law became ORS 161.290 *et seq.*

defense. The defenses, in short, relate to different psychological occurrences.

The Criminal Law Revision Commission understood this to be the case as well. Testimony of Reporter Professor George M. Platt, Minutes, Criminal Law Revision Commission, Subcommittee No. 2, November, 14, 1969, at 13 and January 23, 1970, at 8. During the Criminal Law Revision Commission subcommittee meetings on this defense, Donald Paillette, Project Director, expressed concern as to a possible confusion between the mental disease or defect defense and the extreme emotional disturbance defense. In response, Professor George Platt, Criminal Law Revision Commission Reporter, stated:

> "Under Article 4 [responsibility] it must be a mental disease or defect, this [extreme emotional disturbance] does not necessarily stem from mental disease or defect. Extreme emotional disturbance is not necessarily related to mental disease or defect." Criminal Law Revision Commission, Subcommittee No. 2, January 23, 1970, Tape 45, Side 1.

Thus, the legislature's amendment of the proposed version of the defense (to delete the term "mental or") merely made the language of the statute reflect more clearly the fact that the defenses are different.

However, because the defenses relate to different psychological occurrences does not mean that both conditions may not arise in the same defendant. The drafters of the extreme emotional disturbance defense recognized that there is no reason why a defendant who is "insane" may not also be "extremely emotionally disturbed." During the Criminal Law Revision Commission subcommittee meetings, in response to a question by Senator Yturri regarding a potential overlap between the defense of diminished responsibility and the defense of extreme emotional disturbance, Professor Platt stated:

> "I have no doubt that there would be an individual that would acquire the mental disease or defect situation that might avail themselves of this one [extreme emotional disturbance] just as successfully or unsuccessfully." Criminal Law Revision Commission, Subcommittee No. 2, January 23, 1970, Tape 45, Side 2, Cue No. 50.

This case provides an example of such an occurrence. Here, one psychiatrist reported that defendant suffered from a mental disease or defect at the time of the homicide *and* that he acted under the influence of an extreme emotional disturbance.

The third element of the extreme emotional disturbance defense is objective. Although a defendant may actually have acted under the influence of an extreme emotional disturbance when committing a homicide, he or she is not necessarily entitled to the defense of extreme emotional disturbance under ORS 163.135(1). After a defendant proves the first element of the defense, *i.e.,* that he or she acted under the influence of an extreme emotional disturbance, the defendant still must prove the third element of the defense, *i.e.,* that there was a *"reasonable* explanation" for the disturbance. Because of the third component, "[t]he ultimate test * * * is objective[.]" Proposed Oregon Criminal Code, Criminal Law Revision Commission Commentary, § 89, at 89 (July 1970). Under this objective element, as then Representative Carson stated:

> "[T]he jury is not being asked if the defendant believed he acted reasonably. The question being asked is: Given particular, specified circumstances, does the jury, in its mind, find the activity reasonable for a person with these characteristics." Testimony of Rep. Carson, Minutes, Criminal Law Revision Commission, Subcommittee No. 2, November 14, 1969, at 15.

Left at this point, the extreme emotional disturbance defense strongly resembles its common law antecedent, the "heat of passion" defense.[12] The common law "heat of passion" defense asked if the defendant was provoked into a heat of passion and if, under the circumstances, a "reasonable man" would have been provoked into a heat of passion. *State v. Ott,* 297 Or 375, 381, 686 P2d 1001 (1984). Ostensibly, those questions posed by the common law are the same questions posed under the first and third elements of the extreme emotional disturbance defense.

---

[12] In *State v. Ott,* 297 Or 375, 686 P2d 1001 (1984), we explored the relationship between the extreme emotional disturbance defense and the common law "heat of passion" test.

The extreme emotional disturbance defense, however, in its objective element is broader in scope than the objective element of the common law. Under the objective element of the common law, in asking whether a "reasonable man" would have been provoked under the circumstances, the "reasonable man" did not have any irregular physical or mental characteristics. Dressler, *Rethinking Heat of Passion: A Defense In Search Of A Rationale,* 73 J Crim L & Crim 421, 428 (1982). Under the extreme emotional disturbance defense, however, the legislature has expressly stated that:

> "The reasonableness of the explanation for the disturbance shall be determined from the standpoint of an ordinary person in the *actor's situation* under the circumstances as the actor reasonably believes them to be." ORS 163.135(1) (emphasis added).

This element of subjectivity, the consideration of the "actor's situation," was injected into the objective element of the test because "the old provocation formula [was] much too narrow; it [did] not recognize modern understanding of personalities[.]" Testimony of Professor George M. Platt, Minutes, Senate Criminal Law and Procedure Committee, February 16, 1971, at 9; *State v. Ott, supra,* 297 Or at 387. As the Criminal Law Revision Commission stated:

> "Though it is difficult to state a middle ground between a standard which ignores all individual peculiarities and one which makes emotional distress decisive regardless of the nature of its cause, we think that such a statement is essential. For surely if the actor had just suffered a traumatic injury, if he were blind or were distraught with grief, if he were experiencing an unanticipated reaction to a therapeutic drug, it would be deemed atrocious to appraise his crime for purposes of sentence without reference to any of these matters." Proposed Oregon Criminal Code, Criminal Law Revision Commission Commentary, § 89, at 89 (July 1970) (quoting Model Penal Code Commentary, Tent. Draft No. 9, at 48).

In increasing the scope of the objective element of the defense, the legislature intended to maintain that balance or "middle ground" between objectivity and subjectivity.

In the version of the defense ultimately enacted, however, the legislature tipped the scales of the balance toward objectivity. As drafted, the defense was derived from

and tracked the language of section 210.3(1)(b) of the Model Penal Code. *State v. Ott, supra,* 297 Or at 383-85; Criminal Law Revision Commission, Tent. Draft No. 1, at 17 (March 1970). That provision provides:

"(1)  Criminal homicide constitutes manslaughter when:

"* * * * *

"(b)  a homicide that would otherwise constitute murder is committed under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation or excuse. The reasonableness of such explanation or excuse shall be determined from the viewpoint of a person in the actor's situation under the circumstances as he believes them to be."

As the legislature examined the bill, however, concerns were expressed that perhaps the provision was too subjective. *E.g.,* Rep. Paulus, Minutes, Senate Criminal Law and Procedure Committee, February 16, 1971, at 8-9. Thus, the proposed language was amended to make the defense more objective. *State v. Ott, supra,* 297 Or at 387. That amendment changed the objective "reasonableness of the explanation" element of the defense so that it would be evaluated from the viewpoint of "an *ordinary* person" rather than from the viewpoint of "a person" and so that the circumstances which were to be examined would be "as the actor *reasonably* believes them to be" rather than "as the actor believes them to be." Thus, by virtue of that amendment, the legislature narrowed the subjective scope of inquiry in the trier of fact's determination of the reasonableness of the explanation for defendant's extreme emotional disturbance.

Here, defendant argues that a defendant's mental imbalance (serious enough to constitute insanity as defined by ORS 161.295) should be included in the phrase "the actor's situation." The legislature, however, did not go so far. Even viewing the defense as introduced, in its most subjective form based on the Model Penal Code, the contemplated balance between subjectivity and objectivity meant that some subjective considerations would be included in the "actor's situation" and some subjective considerations would not. Under that version of the defense, the scope of "the actor's situation," with regard to mental infirmities, was left to the

courts. The commentary to the Model Penal Code states:

> "Like blindness or other physical infirmities, perhaps it should be that certain forms of mental abnormality should be regarded as a part of the actor's 'situation' that is relevant to the moral assessment of his conduct. Like temperament or unusual excitability, on the other hand, there are surely other forms of abnormality that should not be taken into account for this purpose. It is left to the courts to define 'situation' as the cases arise." II Model Penal Code and Commentaries § 210.3, at 73 (1980).

Even assuming that breadth of the more subjective version of the statute, it is not clear that insanity would have been a factor taken into account in "the actor's situation." We need not decide that question, however. In light of the legislature's amendment of the defense, adding more objective language, we conclude that the legislature did not intend that an individual's mental disease or defect (as defined by ORS 161.295) should be included within that phrase. To take such a factor into account would eliminate the objective checks intentionally maintained in the defense. What circumstance, for example, would not be reasonable as viewed from the standpoint of an "ordinary insane person"? We do not attribute the intent to the legislature, as defendant would have us do, that insanity is included in the actor's situation.[13]

■       It may be surmised from our foregoing analysis of the insanity defense and the extreme emotional disturbance defense that a given defendant may assert both defenses and, where the evidence is sufficient to support both defenses, the trier of fact may find that both have been proved. This conclusion follows from a proper application of both defenses. Under the insanity defense, the trier of fact first makes a determination as to the defendant's guilt, considering whether the state has proved all the elements of the crime, disproved raised defenses, and whether the defendant has proved any affirmative defenses. In that determination of guilt, the trier of fact considers whether the defendant has proved the affirmative defense of extreme emotional disturbance. Under the first component of that defense, the trier of fact asks and answers whether the defendant was, in fact,

---

[13] We do not, however, foreclose the issue as to whether lesser mental infirmities may be taken into account in the "actor's situation."

acting under the influence of an extreme emotional disturbance. If the trier of fact answers that the defendant was so disturbed (and assuming the second component of the defense does not, as in this case, present an issue), then under the third component the trier of fact determines whether, under the circumstances, an ordinary person, with certain characteristics of the defendant (excluding insanity) would have been extremely emotionally disturbed. A defendant's insanity does not alter or prevent either of those inquires under the extreme emotional disturbance defense. Indeed, in the context of this strict legal model the trier of fact has yet to determine whether the defendant is "insane." That determination is the final one to be made in the application of the insanity defense and the final one to be made by the trier of fact in the case.

Moreover, the legislature has directed us that:

> "In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and *where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.*" ORS 174.010 (emphasis added).

Because the language of the statutes permits an application of both the extreme emotional disturbance defense and the insanity defense, such an interpretation is favored. ORS 174.010. The legislative history of the extreme emotional disturbance defense is replete with statements regarding the intent to expand the scope of that defense over its narrow common law counterpart and that killings done under the influence of extreme emotional disturbance are not as culpable as those that are not. In light of that history, the law should not adjudicate an insane defendant's culpability greater than that of a non-insane defendant's (regardless of the fact that the insane defendant will ultimately not be held criminally responsible).[14]

---

[14] *Amici* Oregon Criminal Defense Lawyers Association and the National Association of Criminal Defense Lawyers urge that the resolution to this case lies in the dispositional phase of the case rather than the guilt phase. ORS 161.327 requires, in part, that if the trial judge finds, *inter alia,* that a defendant is insane and would have been guilty of a felony or misdemeanor which caused physical injury or risk of physical injury to another then the trial judge must enter an order placing the

The reasoning of the Court of Appeals in this case is not to the contrary. The Court of Appeals' held that an insane person could not claim entitlement to the extreme emotional disturbance defense because an insane person "is not acting as an ordinary person in our society." *State v. Counts, supra,* 101 Or App at 442-43. Although this provides one reason why it would be conceptually difficult to include insanity in the "actor's situation," it does not provide a reason why, when insanity is not included in the "actor's situation," the subjective and objective inquiries of the extreme emotional disturbance defense may not be made regarding an insane defendant. To say that an ordinary person is not insane does not mean that a trier of fact could not inquire how an ordinary person would react in the situation in which the insane defendant found himself or herself.

This court's opinion in *State v. Carson,* 292 Or 451, 640 P2d 586 (1982), cited by the state, is also not to the contrary. The issue in *Carson* was whether the evidence of extreme emotional disturbance was sufficient to justify giving the state's requested jury instruction on attempted manslaughter in an attempted murder prosecution. In *Carson,* quoting *People v. Ford,* 423 NYS2d 402, 404, 102 Misc 2d 160 (1979), this court stated:

> " 'Extreme emotional disturbance' has been defined as:
>
> " '. . . the emotional state of an individual who: *(a) has no mental disease or defect (that rises to the level established by statute defining lack of criminal responsibility);* (b) is exposed to an extremely unusual and overwhelming stress; and (c) has an extreme emotional reaction to it as a result of which there is a loss of self-control and reason is overborne by intense feelings, such as passion, anger, distress, grief, excessive agitation or similar emotions . . .' " (Ellipsis added

defendant under the jurisdiction of the Psychiatric Security Review Board. In order to aid in the determination of the length of the board's jurisdiction, ORS 161.325(2)(a) requires that the trial judge "[d]etermine on the record the offense which the person otherwise would have been convicted[.]" It is at this point, *amici* urge, not at the guilt phase that the court must consider a defendant's additional defenses. The difficulty with this position is that it ignores the finding of "guilt" in the verdict of "guilty except for insanity." As noted above, the determination of guilt, and therefore what crime the defendant is guilty of, must be made before the trial court reaches the dispositional phase.

in *Carson;* parenthetical added in *Carson* replacing a statement from *Ford* to the same effect but citing a New York statute; emphasis added).

This definition of extreme emotional disturbance set out in *People v. Ford, supra,* originated in *People v. Patterson,* 39 NY2d 288, 383 NYS2d 573, 347 NE2d 898 (1976), *aff'd sub nom Patterson v. New York,* 432 US 197, 97 S Ct 2319, 53 L Ed 2d 281 (1977). In *Patterson* the court stated:

> "The purpose of the extreme emotional disturbance defense is to permit the defendant to show that his actions were caused by a mental infirmity *not arising* to the level of insanity, and that he is less culpable for having committed them * * *." 347 NE2d at 907 (emphasis added).

*See also State v. Ott, supra,* 297 Or at 392-93 n 19 (quoting this passage from *Patterson).* [15] Our statements in *Carson* do not support the state's position in this case. First, *Carson's* discussion of this factor was *dictum.* It was not an issue in that case and does not constitute a binding holding. Second, placed in the context of *Patterson,* the more likely interpretation of the passage is that the defendant's extreme emotional disturbance *need not* rise to the level of insanity before he or she is entitled to the mitigating effects of the defense — not that it *must not* rise to that level. Third, since *Patterson* and *Ford,* the New York Court of Appeals in *People v. Young,* 65 NY2d 103, 490 NYS2d 179, 182, 479 NE2d 815 (1985), expressly has held that a defendant could claim and the jury could find that his crime of intentional murder should be mitigated to manslaughter because of extreme emotional disturbance *and* that he should be not guilty by reason of insanity of the crime of manslaughter.

In a lower court application of *Young,* the court in *People v. Johns,* 122 AD2d 74, 504 NYS2d 485 (1986), examined a jury charge that in effect limited the application of the insanity defense to the charged crimes of intentional murder and reckless manslaughter and excluded its application if the

---

[15] In *State v. Ott, supra,* this court quoted the same definition of "extreme emotional disturbance" that appeared in *State v. Carson,* 292 Or 451, 640 P2d 586 (1982) and *People v. Ford,* 423 NYS2d 402 (1979). However, the court specifically left out of that definition the factor on which the state relies here. *See State v. Ott, supra,* 297 Or at 393 (leaving out factor).

jury found manslaughter because of extreme emotional disturbance. The defendant was convicted of manslaughter because of extreme emotional disturbance. The court reversed the conviction stating:

> "The charge in this case created the misleading impression that the insanity defense did not apply if the jury found that the defendant satisfied his burden of proving that he was acting while under the influence of an extreme emotional disturbance." *Id.* at 486.

Thus, the basis underlying the state's interpretation of the statement in *Carson* is not supported by the courts where that statement originated. Our holding today squares with the holdings in *People v. Young, supra,* and *People v. Johns, supra.*

██ In this case, the trial court erroneously held that in the light of its finding of insanity, it, as trier of fact, could not consider whether defendant had proved the defense of extreme emotional disturbance and, therefore, whether defendant was guilty except for insanity of manslaughter in the first degree. That error, however, does not require reversal of defendant's conviction unless the error substantially affected a right of defendant. ORS 19.125(2). We hold that, on this record, the error requires reversal. Here, the trial court expressly noted that there was sufficient evidence to support a finding of extreme emotional disturbance. Because of that statement we cannot say that the error was harmless. If defendant has proved the extreme emotional disturbance defense, the length of time he is subject to the jurisdiction of the Psychiatric Security Review Board will be substantially affected. *See, supra,* n 3 (20 years as opposed to life).

We do not, however, conclude that the proper verdict in this case is "guilty except for insanity of manslaughter in the first degree." Ultimately, the verdict may very well be the same as was entered in the first trial. A remand is necessary to determine the proper disposition. We take this action for two reasons. First, it is not clear whether the trial court, in making the statement that the extreme emotional disturbance defense would stand in this case, considered the defendant's insanity as part of the "actor's situation." Such a consideration, if made, was erroneous. Second, the court did not state that it, as trier of fact, would find that the defense

had been proved. The court stated only that there was sufficient evidence to support such a finding. Because of the record's lack of clarity, we remand this case for the trial court to consider, in light of our clarification of the phrase "actor's situation," whether the defendant is entitled to the mitigating factor of extreme emotional disturbance based on the circumstances at the time of his homicidal act.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed. The case is remanded to the circuit court for further proceedings consistent with this opinion.

**GILLETTE, J.,** dissenting.

The majority, by a two-step process of misreading statutes and then misreading precedent, produces a result that will throw the trial of cases involving the defenses of insanity and extreme emotional disturbance into confusion. For that reason, I respectfully dissent.

This case requires this court to decide whether two affirmative defenses are mutually exclusive. The defense of insanity is set forth in ORS 161.295(1):

> "A person is guilty except for insanity if, as a result of mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law."

The defense of extreme emotional disturbance (EED) is set forth in ORS 163.135(1), which provides in part:

> "It is an affirmative defense to murder for purposes of ORS 163.115(1)(a) that the homicide was committed under the influence of extreme emotional disturbance when such disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act, *and for which disturbance there is a reasonable explanation.*" (Emphasis supplied.)

The statute also directs how a defendant may prove "reasonable explanation": "The reasonableness of the explanation for the disturbance shall be determined from the standpoint of an ordinary person in the actor's situation under the circumstances as the actor reasonably believes them to be." ORS 163.135(1). This definition has three components: (1) an

ordinary person; (2) in the actor's situation; and (3) the circumstances of the situation must be as the actor reasonably believes them to be.

The majority today holds that the insanity defense and the EED defense are not mutually exclusive. The majority first notes that the insanity defense requires that a defendant be found guilty before insane. "[W]e hold that the defense of mental disease or defect requires a finding that the defendant is criminally *culpable* before a question arises as to whether society will hold the defendant criminally *responsible*." 311 Or at 622. (Emphasis in original.) Next, the majority reviews the EED defense, which is applied during the guilt determination, and articulates a standard for EED which only incorporates the first two components of "reasonable explanation." The majority focuses on "the ordinary person" and "the actor's situation" components, explaining how the EED defense now contains both a subjective and an objective element. As to this discussion, I agree. But the majority fails to consider the third component of the definition of a "reasonable explanation," and never discusses the application of both the insanity and the EED defenses in the situation as the defendant *reasonably* believed himself to be.[1] When doing so, the defendant, as a matter of law, must, at the time of the murder, be reasonably perceiving all the facts. If, as a result of insanity, the defendant commits a homicide, how can, at that same moment, the defendant be reasonably perceiving all the facts in his situation?[2] The answer, at least under Oregon law, is that he cannot. The proof is simple mathematics.

---

[1] Defendant invited this error by arguing that "a defendant's mental imbalance (serious enough to constitute insanity as defined by ORS 161.295) should be included in the phrase 'the actor's situation.' " 311 Or at 627.

The majority cites *State v. Ott*, 297 Or 375, 686 P2d 1001 (1984), for its legislative history and interpretation of ORS 163.195. In *Ott*, however, this court also overlooked the third component of the definition of a "reasonable explanation." In summing up the amendments which created the current EED defense, we stated that "[t]his [is a] legislative mix of the 'ordinary' person's views and the subjective belief of the defendant as to the reasonableness of his conduct in what the defendant believes the circumstances to be * * *." 297 Or at 394. We inadvertently omitted "reasonably" and should have said "* * * in what the defendant reasonably believes the circumstances to be * * *." This omission was not pertinent in *Ott*, as it had no effect on the outcome of the case. In the present case, however, the omitted word is pivotal.

[2] Consider, for example, a situation in which a defendant is suffering from a delusion or hallucination. It is impossible to say that he "reasonably believes" all the facts involved in his situation. By definition, a delusion is "something that is falsely

Both the insanity defense and the EED defense are affirmative defenses. The defendant must prove all the elements of each defense by a preponderance of the evidence, ORS 161.055(2), *i.e.*, he must do so by convincing the trier of fact that what he claims is more probably true than false. *Cook v. Michael*, 214 Or 513, 519, 330 P2d 1026 (1958).

ORS 161.295, the insanity defense, is applicable to those defendants who do not know or understand what they allegedly did, or could not control their conduct. By contrast, ORS 163.135, the EED defense, is applicable to those defendants who *do* know and understand what they allegedly did, but could not control their conduct, and are offering a reasonable explanation so as to diminish their culpability. In the insanity defense, a defendant must prove that he or she cannot reasonably perceive the reality of the world — that he or she "lacks substantial *capacity* either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law." ORS 161.295(1). (Emphasis supplied.) In the EED defense, the defendant must prove that he or she "reasonably believes" circumstances under which an ordinary person, in that situation, would be overcome by emotion. In my view, if a person lacks substantial *capacity* to appreciate the meaning of or to control the person's commission of a certain act, then that person cannot be said *reasonably* to believe *all* the circumstances surrounding the act to be what they are in fact.

The legislature recognized the need for such logical consistency when it amended the EED defense and added "reasonably" before "believes" in ORS 163.135. *See* 311 Or at 627. By doing so, the legislature *denied* the EED defense (a defense only given by legislative grace) to a defendant who, at the time of committing the murder, did not "reasonably" believe the circumstances, *i.e.*, was not able reasonably to perceive the world and its realities. In other words, the legislature expressly and specifically has disallowed this legislative grace to defendants who, as a result of insanity, commit murder. The EED defense was intended to be available only

or delusively believed or propagated; false belief or a persistent error of perception occasioned by false belief or mental derangement." Webster's New International Dictionary 598 (3d ed 1971).

to people who, at the time of the murder, were sane. Today, however, a majority of this court gives what the legislature expressly withheld.

Although placed last in the wording of the definition for "reasonable explanation" under ORS 163.135, the requirement that the defendant "reasonably" believe is, in logic, undertaken first. This initial inquiry often is overlooked in cases, as it is today by the majority,[3] because the EED defense is designed for persons *who knew what they were doing* when they committed homicide. The debate normally is centered on whether the EED defense is subjective, objective, or both. But the question of whether the defense is subjective or objective *is separate from whether the defendant "reasonably believes"* certain facts to be true, and any prior cases or legislative history must be read accordingly. The majority fails in this when it attacks the issue in this case under the first and second components of a "reasonable explanation" — "the ordinary person" and "the actor's situation" — and concludes that "the legislature did not intend that an individual's mental disease or defect (as defined by ORS 161.295) should be included with that phrase [in the actor's situation]." 311 Or at 628. Of course it didn't. The majority has missed the point.

Now, upon reviewing the *entire* plain language of the two defenses, it is apparent that they contain inconsistent elements.[4] And given the fact that they are both affirmative defenses, it is clear that they are mutually exclusive. If, under the statutory scheme, an actor murders someone as a result of insanity, a fact which must be proved more probable than not, then any other reason for the actor's conduct that is inconsistent with insanity is *a fortiori* less probable than not.

---

[3] After analyzing the EED defense in light of legislative history and commentary, the majority posits that "[u]nder the third component [of the elements of the EED defense] the trier of fact determines whether, *under the circumstances,* an ordinary person, with certain relevant characteristics of the defendant (excluding insanity) would have been extremely emotionally disturbed." 311 Or at 629. (Emphasis supplied.) Again, ORS 163.135(1) expressly states that the inquiry is "under the circumstances *as the actor reasonably believes them to be.*" (Emphasis supplied.) By omitting the last phrase, the majority rewrites the statute.

[4] This is of no surprise given the fact that insanity and extreme emotional disturbance are different psychological occurrences. 311 Or at 623-24.

The majority confuses the difference between concurrent causation and "but for" causation. The majority states that the EED defense requires that "[t]he defendant is entitled to the [EED] defense only if the defendant was *acting under* such a[n extreme emotional] disturbance. ORS 163.135(1)." 311 Or at 623. (Emphasis supplied.) I agree. In the next sentence, the majority states that "[t]he defendant must prove * * * that he or she 'acted under' an *emotional* disturbance." *Id.* (Emphasis in original.) Again, I agree. But the majority does not recognize the consequence of this last point. A person can be extremely emotionally disturbed and yet remain controlled, *i.e.*, not murder someone. The EED defense requires that the extreme emotional disturbance be the cause of the murder, that "the homicide was committed *under the influence* of extreme emotional disturbance * * *." ORS 163.135(1). (Emphasis supplied.)

The same must be said of the insanity defense: "A person is guilty except for insanity if, *as a result of* mental disease or defect *at the time of engaging in criminal conduct,* the person [is insane] * * *." ORS 161.295. (Emphasis supplied.) The statute mandates that the elements of a crime must be performed *as a result of* insanity. It is illogical to say that an act was committed *under the influence* of one psychological occurrence and *as a result of* another psychological occurrence. Both statements require a predominant psychological occurrence.

The majority does not address this problem when it proclaims, correctly, I believe, that "[t]he drafters of the extreme emotional disturbance defense recognized that there is no reason why a defendant who is 'insane' may not also be 'extremely emotionally disturbed.' " 311 Or at 624. It is logical, for example, for a man who believes himself to be from Mars — a delusion — also to murder someone while under the influence of an extreme emotional disturbance. But it is illogical to say that at the same time, *as a result of* his insanity, he murdered. On the other hand, if as a result of "being from Mars" the man kills the victim, then, as a matter of law, the man, under any circumstances, did not murder *under the influence of* extreme emotional disturbance; the homicide instead was a product of the insanity.

In language and in application, the insanity and EED defenses are mutually exclusive. Of course, an insane defendant who has yet to prove insanity, may successfully assert an EED defense. But once the trier of fact finds the third component of the "reasonable explanation" — that the defendant *reasonably* believed all the circumstances to be as, in fact, they were — then the defendant is precluded from asserting that at the time of the murder he lacked the "capacity" to prevent his acts or appreciate their criminality. The state, in essence, need only argue issue preclusion: The issue of what was the predominant psychological occurrence in the defendant's mind at the time of the murder has been decided already — the defendant committed the murder under the influence of, *i.e.*, because of, the extreme emotional disturbance. Hence, a defendant may raise both the insanity defense and the EED defense at trial. The trier of fact, however, can only, under the statutory scheme, find one applicable to the defendant. The defendant cannot have it both ways.

The majority has needlessly further complicated an area of the law that cries out for clarification. Because of the timing of our decision — a circumstance that is no one's fault — murder trials for the next two years are going to be even more complicated than they have been.

The majority's conclusion is not supported by the legislative history it cites. In the only history pertinent to this issue, the majority quotes then Representative Carson's articulation of the test under the current EED defense: "Given *particular, specified circumstances,* does the jury, in its mind, find the activity reasonable for a person with these characteristics." *See* 311 Or at 625. (Emphasis supplied.) Given *what* particular and specific circumstances? The statute expressly provides the answer: "[U]nder the circumstances as the actor *reasonably* believes them to be." ORS 163.135(1). (Emphasis supplied.)

Neither can the majority successfully seek refuge in the "persuasive" authority on which it relies. Of those cases, the first two contradict the majority, the third is different, and the fourth is wrong.

The majority reads *People v. Ford,* 423 NYS2d 402, 102 Misc 2d 160 (1979), and *People v. Patterson,* 39 NY2d 288, 383 NYS2d 573, 347 NE2d 898 (1976), *aff'd sub nom Patterson v. New York,* 432 US 197, 97 S Ct 2319, 53 L Ed 2d 281 (1977),[5] to hold that "the defendant's extreme emotional disturbance *need not* rise to the level of insanity before he or she is entitled to the mitigating effects of the defense — not that it *must not* rise to that level." 311 Or at 631. (Emphasis in original.) Earlier, the majority stated, however, that insanity and extreme emotional disturbance are different *in kind,* not different *in degree. See* 311 Or at 623-24.

The majority also states that:

"[S]ince *Patterson* and *Ford,* the New York Court of Appeals in *People v. Young,* 65 NY2d 103, 490 NYS2d 179, 182, 479 NE2d 815 (1985), expressly has held that a defendant could claim and the jury could find that his crime of intentional murder should be mitigated to manslaughter because of extreme emotional disturbance *and* that he should be not guilty by reason of insanity of the crime of manslaughter."

311 Or at 631. (Emphasis in original.) The majority misreads *Young;* that case did not involve two affirmative defenses. In *Young,* the defendant was charged with a single count of second degree murder. NY Penal Law § 125.25. The defendant raised the affirmative defenses of insanity[6] and EED.[7]

---

[5] In *State v. Carson,* 292 Or 451, 459, 640 P2d 586 (1982), this court, quoting *People v. Ford,* 423 NYS2d 402, 102 Misc 2d 160 (1979), stated that " '[e]xtreme emotional disturbance' has been defined as: '* * * the emotional state of an individual who: *(a) has no mental disease or defect. (that rises to the level established by statute defining lack of criminal responsibility); * * *.*' " (Emphasis supplied.) The majority states that this definition originated in *People v. Patterson,* 39 NY2d 288, 383 NYS2d 573, 347 NE2d 898 (1976), *aff'd sub nom Patterson v. New York,* 432 US 197, 97 S Ct 2319, 53 L Ed 2d 281 (1977). 311 Or at 631.

[6] New York Penal Law § 40.15 states:

"In any prosecution for an offense, it is an affirmative defense that when the defendant engaged in the proscribed conduct, he lacked criminal responsibility by reason of mental disease or defect. Such lack of criminal responsibility means that at the time of such conduct, as a result of mental disease or defect, he lacked substantial capacity to know or appreciate either:

"1. The nature and consequences of such conduct; or

"2. That such conduct was wrong."

[7] New York Penal Law § 125.25 states, in part:

"A person is guilty of murder in the second degree when:

"1. With intent to cause the death of another person, he causes the death of

"At the People's request, the [trial] court agreed, additionally, to charge manslaughter in the first degree (Penal Law § 125.20)."[8] *Id.* 65 NY2d at 107. Once the trial court allowed the state to charge the defendant with first degree manslaughter, the affirmative defense of EED was not applicable to the case. *See* New York Penal Law § 125.25(1)(a) ("Nothing contained in this paragraph [which sets forth the affirmative defense of extreme emotional disturbance] shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree").

In *Young, supra,* the trial court first instructed the jury on the elements of second degree murder and the applicability of the insanity defense. The trial court next gave instructions on the elements of first degree manslaughter; it did not instruct the jury on the affirmative defense of EED. The New York Court of Appeals reversed because the trial court failed to instruct the jury that it could find the defendant both guilty of first degree manslaughter and insane. This holding, however, does not aid the majority, for two different reasons.

First, because there was no affirmative defense of EED, the defendant in *Young* did not have the burden of proof

---

such person or of a third person; except that in any prosecution under this subdivision, it is an affirmative defense that:

"(a) The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which *is* to be determined from the viewpoint of a person in the defendant's situation *under the circumstances as the defendant believed* them to be. *Nothing contained in this paragraph shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree* or any other crime; * * *."

(Emphasis supplied.)

[8] New York Penal Law § 125.20 states, in part:

"A person is guilty of manslaughter in the first degree when:

"1. With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or

"2. With intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as defined in paragraph (a) of subdivision one of section 125.25. The fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subdivision; * * *."

on the definition of extreme emotional disturbance. The commentary to New York Penal Article 125 states that, when the charging authority directly charges the defendant with first degree manslaughter, "extreme emotional disturbance" is neither an element of first degree manslaughter nor a defense thereto and need not be alleged by the people or proved by either party. McKinney's Penal Law Comment prec. § 125.00 at 489 (citing Staff Comments of the Commission on Revision of the Penal Law). Second, unlike Oregon's, New York's EED defense, and its definition of a "reasonable" explanation or excuse, does not contain the limit at issue in this case. New York's definition states "* * * the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the *defendant believed* them to be." NY Penal Law § 125.25(1)(a). (Emphasis supplied.) Oregon's EED defense requires the "actor's situation" to be "under the circumstances as the actor *reasonably* believes them to be." ORS 163.135(1). (Emphasis supplied.) It is this one word — "reasonably" — that is at issue in this case.

The majority also cites as authority a New York lower court's errant application of *Young, viz., People v. Johns,* 122 App Div 2d 74, 504 NYS2d 485 (1986). 311 Or at 631. The court in *Johns* cited *Young, supra,* as authority for the proposition that the insanity defense applied even if the defendant satisfied his burden, under the EED defense, of proving that when he committed the murder, he was acting while under the influence of an extreme emotional disturbance. *Johns,* 504 NYS2d at 486. As shown above, the affirmative defense of EED was not at issue in *Young.* The *Johns* court misapplied *Young. Johns* therefore is not persuasive authority for the position argued by the majority.

The majority today holds that the legislature intended that a criminal defendant's mental condition, clouded by two different psychological occurrences — both of which the criminal defendant must prove — can simultaneously make the defendant partially responsible for a murder (the EED defense) and completely excuse him from all responsibility (the insanity defense). This holding is contrary to the plain language of the respective defenses, is

anomalous in effect, is not justified by the legislative history, and is not supported by any persuasive authority.

I respectfully dissent.

Peterson, C. J., joins in this dissenting opinion.