In the Matter of
Karen Louise McIntire, a Child.

## STATE ex rel JUVENILE DEPARTMENT OF COOS COUNTY,
*Respondent,*

.*v.*

Karen Louise McINTIRE,
*Appellant.*

(J3495; CA A67216)

839 P2d 770

Chris G. Palmer, Coquille, argued the cause for appellant. With him on the brief was Woods & Palmer, Coquille.

James Juliussen, Certified Law Student, Salem, argued the cause for respondent. With him on the brief were David B.

Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Jonathan H. Fussner, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DURHAM, J.

## DURHAM, J.

Child was found within the jurisdiction of the juvenile court for committing murder. ORS 163.115(1)(a); ORS 419.476(1)(a). She argues that she committed only manslaughter, because she acted under an extreme emotional disturbance. ORS 163.118(1)(b). On *de novo* review, ORS 419.561(5), we affirm.

On June 25, 1990, child killed her step-father. She testified that he had sexually abused and forcibly raped her several times in the preceding months. She did not report the abuse to her mother. When she had informed her mother earlier that her step-grandfather had committed similar acts, her mother did not believe her. Some of her friends testified that child had told them that she suffered from her step-father's sexual abuse. Because she had repeatedly stolen the family truck, her parents had confined her to their house, with the approval of the juvenile court. She was not permitted to leave home without her parents, except to attend school. She testified that ending her step-father's life was the only way that she could escape from him.

Child had tried to poison her step-father on two earlier occasions, but failed. She testified that she had also come very close to killing her mother but could not bring herself to do it. She believed that her mother would be better off dead after child had killed her step-father, because then she would not be alone.

On the day of the homicide, child learned the location of a gun in the house. She consulted with a friend about buying ammunition and found some bullets in the house.

That night her mother went to work. Child and her step-father played a round of golf and returned home. After dinner, he fell asleep in a chair in the living room. Child pointed the loaded gun at him about ten times but did not pull the trigger. She telephoned two friends who were staying together and told them what she was trying to do. They bet each other a package of cigarettes that she would not kill her step-father and called her "chicken." She put down the phone and fired a shot into her step-father. She then ran into her bedroom and hid there until she could no longer hear his cries for help. She then picked up the phone and told her friends

that she had shot him and was coming to their house, which she did.

One of her friends returned to her home with her. They ripped out all the telephones, removed the victim's rings and searched his body for money. Child had packed 3 sleeping bags and 2 bags of clothes in preparation for her getaway. She and her friend drove back to his house, where she hid in the barn. After talking to her friends and a juvenile court counselor, she turned herself in the next day.

■ Child assigns error to the trial court's refusal to find that she acted under an extreme emotional disturbance. Child has the burden of proving the existence of that by a preponderance of the evidence, because it is a partial defense to murder.[1] ORS 163.118(1)(b); ORS 161.055(2).

At trial, child's expert witness, a clinical psychologist, testified that child had committed the homicide under the influence of an extreme emotional disturbance. He discussed various psychological tests that he had given and said that she suffered from post-traumatic stress disorder (PTSD), which resulted from her step-father's long-term sexual abuse. According to him, the effect of the abuse was manifested in her inability to understand the consequences of her action and the lack of logical thinking.

The state's expert, also a clinical psychologist, testified that child did not suffer from PTSD. He stated that she did not exhibit many of the typical symptoms. She did not withdraw from social contact, which is behavior typically displayed by PTSD victims, and, instead, sought out friends and did not want to be alone. Moreover, PTSD is a post-trauma syndrome. Here, child claimed that she was still enduring sexual abuse when she killed her step-father. According to the state's expert, if sexual abuse had occurred, PTSD would develop, if at all, only after that traumatic stress

---

[1] As the court explained in *State v. Ott*, 297 Or 375, 377 n 2, 686 P2d 1001 (1984):

"Intentionally killing while under the influence of extreme emotional disturbance does not present a true 'defense,' for the punishment is merely reduced through the mechanism of denominating the crime as 'manslaughter' rather than 'murder.' It could be considered a 'partial defense' in the sense that an acquittal of the charge of murder occurs when the jury finds that the defendant is guilty only of manslaughter."

had ended. He also testified that child was in control of her emotions at the time of the killing and did not labor under an extreme emotional disturbance. The trial court agreed with the state's expert.

ORS 163.115 provides:

"(1) [C]riminal homicide constitutes murder:

"(a) When it is committed intentionally, except that it is an affirmative defense that, at the time of the homicide, the defendant was under the influence of an extreme emotional disturbance."

ORS 163.118 provides:

"(1) Criminal homicide constitutes manslaughter in the first degree when:

"* * * * *

"(b) It is committed intentionally by a defendant under the influence of extreme emotional disturbance as provided in ORS 163.135. The fact that the homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing the homicide which would otherwise be murder to manslaughter in the first degree and need not be proved in any prosecution."

ORS 163.135(1) provides:

"It is an affirmative defense to murder for purposes of ORS 163.115(1)(a) that the homicide was committed under the influence of extreme emotional disturbance when such disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act, and for which disturbance there is a reasonable explanation. The reasonableness of the explanation for the disturbance shall be determined from the standpoint of an ordinary person in the actor's situation under the circumstances as the actor reasonably believes them to be. Extreme emotional disturbance does not constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

■    In *State v. Counts*, 311 Or 616, 623, 816 P2d 1157 (1991), the Supreme Court, construing ORS 163.135(1), stated:

"The three components of extreme emotional disturbance are: (1) Did the defendant commit the homicide under the influence of an extreme emotional disturbance? (2) Was the

disturbance the result of the defendant's own intentional, knowing, reckless, or criminally negligent act? (3) Was there a reasonable explanation for the disturbance?" (Footnote omitted.)

The court said that the first question is a "purely subjective inquiry. It asks whether the defendant was in fact acting under the influence of an extreme emotional disturbance when committing the homicide." 311 Or at 623.

■ On *de novo* review, we find that child did not commit the homicide under the influence of an extreme emotional disturbance. The evidence does not persuade us that she experienced an emotional disturbance to the extent that she lost the self-control that otherwise would have prevented her from committing the homicide. *State v. Ott, supra* n 1, 297 Or at 393.

Because she did not act under the influence of an extreme emotional disturbance, we do not consider the other aspects of that partial defense.

Affirmed.